## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **WILLIAM KNOWLES, CHARLES NEFF, and SCOTT VIADOCK,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:19-2115** |
| **v.** | : | **(JUDGE MANNION)** |
| **EXETER TOWNSHIP, SUPERVISOR DANIEL FETCH, in his individual capacity, and SUPERVISOR DONALD KRESESKI in his individual capacity,** | : : : | |
| **Defendants** | : : | |

## MEMORANDUM

This First Amendment retaliation case stems from talk of traffic tickets. An Exeter Township supervisor told the chief of police that one of his officers should be out on the highway citing tractor trailers. The chief, Plaintiff William Knowles, objected to what he considered an illegal order and reported the interaction to other Township officials. Plaintiffs allege that Defendants then mounted a "campaign of harassment" against them in retaliation for having reported the supervisor. They bring two counts through 42 U.S.C. §1983, claiming that Defendants violated their First Amendment rights. Defendants have moved for summary judgment.

## I.    BACKGROUND[1]

The facts central to this action are disputed. At this stage, the court must view them "in the light most favorable to the non-moving party," here, Plaintiffs, and "must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). Of course, Plaintiffs may not "solely rest upon [their] allegations in the pleadings, but rather must set forth specific facts such that a reasonable jury could find" in their favor. *Id.* So where certain facts here are disputed, and Plaintiffs have set out specific evidence of their version, the court will accept that version as true and determine whether Defendants are nevertheless entitled to judgment as a matter of law.

At relevant times, Plaintiff Knowles was the chief of police of Exeter Township, (Doc. 45-1 at 8), and Plaintiffs Neff and Viadock were police officers for the Township. (Doc. 45-2 at 5–6; Doc. 45-3 at 8). Defendant Fetch is a member of the Township's board of supervisors. (Doc. 45-4 at 4).

---

[1] As required by Local Rule 56.1, Defendants filed a "statement of undisputed material fact," (Doc. 43-2), and Plaintiffs filed an answer to this statement. (Doc. 45). Defendants' statement mostly reports what Plaintiffs "allege," and thereby reveals little in the way of undisputed facts. The court derives facts from the evidence submitted by the parties, including depositions of Knowles, (Doc. 45-1), Neff, (Doc. 45-2), Viadock, (Doc. 45-3), and Fetch (Doc. 45-4).

Defendant Donald Kreseski is employed by the Luzerne County Sheriff's Department and is also a Township supervisor. (Doc. 49-3 at 4).

According to Knowles, in the early morning of February 22, 2019 Fetch came into the police station and asked him why Neff "was not on the road at 5:30 in the morning writing traffic citations on tractor trailers because that is the time of the morning when they come barreling up [Route] 92," and "wanted to know why he was in the station and not on the road." (Doc. 45-1 at 12). Fetch "proceeded to say that [Neff] was probably sleeping … and that this is why the township should have never hired guys in their 40s and 50s who were overweight, lazy." (Id.). He said that "[h]e should've hired younger, more aggressive kids out of the academy," and told Knowles that Neff "should have been out there writing traffic citations on tractor trailers." (Id.).[2] Knowles responded that he could not tell his officers to write tickets, he could only tell them to monitor traffic. (Id.). He told Fetch that "he could not order [Knowles] to write more tickets" or order him to "order [his] officers to write more tickets." (Id.). Knowles told Neff that Fetch was unhappy with him being in the station. (Id.). Fetch has testified that he never complained about where

---

[2] Knowles has testified that statements like these were "a constant thing …. Get to the academy and get these young kids …. He wanted revenue. He wanted … guys to go out there and be aggressive and write tickets and … that was requested a lot." (Doc. 45-1 at 20).

- 3 -

Neff was and never complained about hiring older officers. (Doc. 45-4 at 12, 14). He further testified that he has "never told Mr. Knowles to write more tickets." (Id. at 15).

Soon after the conversation about writing traffic citations, Knowles says that he contacted Chairman of the Board of Supervisors Robert Kile about the interaction. (Doc. 45-1 at 14). He also contacted the Township solicitor Gene Molino. (Id.). On March 14, 2019, the Township's Board of Supervisors issued a directive to the police department that forbid "on the spot or impromptu disciplinary actions ... by a member of the board of supervisors." (Doc. 49-1). It explained that "[t]his directive is not a new policy but an enforcement of an existing policy." (Id.).

The Complaint alleges that "on or about March 1, 2019," Fetch "threatened to transfer" Knowles. (Doc. 20 ¶18). According to Knowles, on that day, Fetch and Defendant Kreseski had criticized him for helping the street department by using his patrol car to slow traffic while work was done, which a supervisor had ordered. (Doc. 45-1 at 16). Fetch came into the station and asked Knowles about his vest size, and said "I'm trying to fit you for a vest and flag." (Id.). He then said: "If you don't want to work for the police department and you want to work for the street department, I'm going to transfer you to the street department." (Id.). Knowles interpreted this as a

- 4 -

"serious" threat of transfer. (Id.). He testified that this encounter "was just another thing that [Fetch] did to me, and the way he treated me … I walked on eggshells for two years of my career." (Id.).

Knowles testified about another instance in which he was walking across the parking lot near the Township building, and Fetch said "get the fuck out of here, you're not wanted here. Go hang out in the street department with your boys." (Id. at 17). He further testified that he was "belittled and harassed and pressured on a constant" basis by Fetch, to the point where he "couldn't do the job." (Doc 49 at 16).

Knowles initially filed this suit in March 2019. (Doc. 1). He has testified that following the filing of the lawsuit, Defendant Kreseski "discontinued … verbal conversation" with him, and thereafter corresponded only through text. (Doc. 45-1 at 25–26).

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving

party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III.   DISCUSSION

The Second Amended Complaint brings two counts. In Count I, Plaintiffs claims a violation of their First Amendment rights, alleging that "Defendants have intimidated Plaintiffs and have affected the way they perform their duties because Plaintiffs reported official misconduct and corruption," and that "Defendants' conduct, actions, and campaign of harassment have caused Plaintiffs mental anxiety, stress, and sleeplessness." (Doc. 20 at 3, ¶¶32–33). In Count II, Plaintiff Knowles claims

that Kreseski and the Township retaliated against him for filing this lawsuit. (Doc. 20 at 8).

The parties construe Count I as raising a claim of First Amendment retaliation. (Doc. 44 at 12–13; Doc. 49 at 23). A First Amendment retaliation claim requires plaintiffs to show that "(1) they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Defendants advance several arguments in support of summary judgment on Count I. As they interpret the Second Amended Complaint, it alleges that the retaliatory action was the request to write more tickets. Accordingly, Defendants argue that Plaintiffs' claim fails because the allegedly retaliatory conduct *preceded* the allegedly protected speech. (Doc. 44 at 17–18, 22). They also contend that Fetch's comments are insufficient, at any rate, to constitute retaliation. (Id. at 18–21). They further argue that the Board of Supervisors cannot be held liable for Fetch's allegedly retaliatory actions, because those actions were never endorsed by a majority of the Board. (Id. at 23–28). Finally, they assert that no municipal liability can

lie here because Plaintiff has failed to establish a Township policy or custom. (Id. at 28–29).

Plaintiffs argue that they have established retaliation in the form of Defendant Fetch's threats of transfer, harassment, criticisms, refusal to provide mental health assistance, and general interference with their ability to do their jobs. (Doc. 49 at 27–34). They also contend that they have shown a causal relationship between the retaliatory conduct and protected speech. (Id at 34–43). As to municipal liability, Plaintiffs assert that the Township should be held liable because it "acquiesced in Defendants Fetch's misconduct and continued the campaign of harassment that had the force of a custom." (Id. at 43–45).

In reply, Defendants argue that Plaintiffs have established no causal link between protected activity and adverse conduct, and that the alleged adverse conduct does not rise to the level of actionable retaliation. (Doc. 51 at 5–7). They reiterate their argument regarding Plaintiffs' failure to state a claim for municipal liability. (Id. at 9–10).

## A. Count I – Protected Speech

"When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern." *Borough of Duryea v. Guarnieri*,

564 U.S. 379, 386 (2011) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)).

The Complaint indicates that Plaintiffs consider their reporting of Fetch's conduct protected speech. (Doc. 20 ¶¶17, 27–30). Plaintiff Knowles testified that he relayed to Chairman Kile his conversation with Fetch soon after it occurred. (Doc. 45-1 at 14). He relayed it to Solicitor Molino as well. (Id. at 15). During the conversation with Molino, he also brought up "derogatory statements" and "continuous harassment" on the part of Fetch. (Id.).

Defendants do not concede that Plaintiffs engaged in protected speech, (Doc. 44 at 17 (referring to Plaintiffs' "alleged protected speech"), 18 ("Assuming for the moment that the speech at issue is protected ….")), but also do not make argument on this element.

Reporting a crime or testifying about public corruption may constitute protected speech by a public employee. *See Javitz v. County of Luzerne*, 940 F.3d 858, 867 (3d Cir. 2019); *Lane v. Franks*, 573 U.S. 228, 240–41 (2014). And "attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials," *Baldassare v. State of New Jersey*, 240 F.3d 188, 195 (3d Cir. 2001), or "speech disclosing public officials' misfeasance," *Swingeford v. Synder Cnty.*, 15 F.3d 1258, 1271 (3d

- 10 -

Cir. 1994), may also be protected. Plaintiffs describe their speech in these terms, (Doc. 20 ¶30 ("Plaintiff's free speech exposing corruption and municipal misconduct are a matter of public concern.")). Without the benefit of argument, though, and because the court concludes that summary judgment is warranted on other grounds, the court does not decide whether Plaintiffs' speech here is protected.

### B. Count I – Retaliatory Action

A "cognizable First Amendment claim" requires that "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). "The effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than *de minimis*." *Id.* (internal quotations omitted).

Although a "campaign of retaliatory harassment" may suffice, *Suppan v. Dadonna*, 203 F.3d 228, 234–35 (3d Cir. 2000), "not every critical comment—or series of comments—made by an employer to an employee" amounts to a constitutional violation. *McKee*, 436 F.3d at 170. Indeed, "courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or

verbal reprimands." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)).

Defendants contend that the alleged retaliation was *de minimis*, and that, in any event, it cannot be attributed to the Board of Supervisors as a whole. (Doc. 51 at 5–9). They rely heavily on *Watson v. Borough of Susquehanna*, No. 3:09-CV-294, 2012 WL 5249551, at *3–5 (M.D. Pa. October 23, 2012). The plaintiff there moved for judgment as a matter of law on her First Amendment retaliation claim following a jury verdict against her. *Id.* at *1. She alleged that the defendant, the Borough of Susquehanna, had terminated her from her police officer position in retaliation for protesting a disclosure of her private information. *Id.* The jury had determined that of the six Borough Council members who voted to terminate her, only one was aware of her protected speech, was substantially motivated by it, and would not have made the same decision absent that speech. *Id.* at *3. The court concluded that because that member "lacked the authority to terminate anyone's employment" himself, he could not have, "[a]cting alone," "violated [the] [p]laintiff's First Amendment rights." *Id.* at *5.

The challenged action here is not one, like the termination at issue in *Watson*, that legally required a majority vote of the Board. Instead, Plaintiffs

allege that Defendants Fetch and Kreseski retaliated through their individual acts of harassment. While the individual council member's retaliation in *Watson* could not have by itself caused termination, the individual Defendants here were capable of retaliating, as Plaintiffs allege, by other, unofficial means. So *Watson* does not foreclose Plaintiffs' claims against the individual Defendants, though it does highlight an important aspect of Plaintiffs' claim for municipal liability (which is addressed *supra* Section III.D)—they do not allege that the Township itself took an affirmative retaliatory act.

We must consider whether the retaliatory actions allegedly taken by the individual Defendants were sufficient, as a whole, to deter a person of ordinary firmness from exercising his First Amendment rights. Plaintiffs characterize Defendant Fetch's conduct as a "sustained campaign of retaliatory harassment." (Doc. 49 at 29). And Plaintiff Knowles describes "derogatory statements," "continuous harassment," being "harassed daily … in so many ways," "treated badly" or "like a piece of junk," and being "belittled." (Doc. 45-1 at 15, 30, 41). As far as specific acts, he recounts the following comments made by Fetch:

> "[Y]ou'll know when you're not doing a good job because I'll be here at 7:00 in the morning looking for your badge and keys." (Doc. 45-1 at 30).

"[G]et the fuck out of here, you're not wanted here. Go hang in the street department with your boys." (Id. at 17).

"I'm trying to fit you for a vest and a flag. If you don't want to work for the police department and you want to work for the street department, I'm going to transfer your down to the street department." (Id. at 16).

After township meetings, Fetch was "cornering us … asking us if we went to the academy, did we get applications from these kids? They'll write everybody up." Fetch "was on me [Knowles] every chance he got. He made a comment, to myself and Corporal Neff, that we were the only department in the municipality that generates revenue, and we weren't doing our job." (Id. at 19).

Fetch explained that during highway construction work, a certain area would be one lane, and said "I want a car here … and I want you guys writing tickets." (Id. at 23).

Knowles further testified that following a tragic work-related incident, it "[t]ook the Township four days to get me any help." (Doc. 45-1).

Plaintiff Viadock testified that:

Fetch told him that "you guys are going to start issuing a lot more tickets down by the bridge." (Doc. 45-3 at 12).

Fetch would "complain[] that I'm not patrolling by his house and his house only." (Doc. 45-3 at 14).

At one point, Fetch "took it upon himself to take like a malibu light, something light that, tape it to the banister, to the railing outside of our office, and have it pointing in our doorway," which was "an officer safety issue" because "[y]ou can see inside." (Id. at 16).

After a meeting, Fetch came into their office to speak with Knowles, and "didn't even acknowledge the fact that [Viadock] and [Neff] were in the office …. [h]e just walked past us … like we were dogs just standing there." (Doc. 45-3 at 17).

Finally, Plaintiff Neff testified that:

Fetch made "statements that … they should have never hired a person of my age, you know. And how … if they would have hired younger, they will have got more out of the younger person than an older person." (Doc. 45-2 at 26).

Unfortunately for Plaintiffs', the testimony demonstrates no more than a series of immature criticisms and rudeness. Especially considered in light of the undisputed fact that Defendant Fetch lacked individual authority to take official action against Plaintiffs,[3] these do not amount to conduct sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.[4] *See, e.g.*, *McKee*, 436 F.3d at 171 (concluding that the defendant-supervisor's comments, which were "critical of [the plaintiff's] job performance" and could be "construed as reprimands," would not, "taken together … have deterred a person of ordinary firmness from exercising his First Amendment rights"); *Revell v. City of Jersey City*, 394 Fed. App'x 903, 906 (3d Cir. 2010) (non-precedential) ("Revell's allegations, which were equivalent to a few criticisms, admonishments, or verbal reprimands, do not rise to the level of a campaign of retaliatory harassment."). So Plaintiffs have

---

[3] See Doc. 45-1 at 9; 53 Pa. Stat. Ann. §65603 ("An affirmative vote of a majority of the entire board of supervisors at a public meeting is necessary in order to transact any business.").

[4] However, if true, the statements and activities of Defendant Fetch are a profound embarrassment to the public that he serves. While the statements here may not rise to an actionable level, they are nonetheless repugnant, indicative of unwarranted arrogance and significantly below the level of any competent public official.

failed to show actionable retaliatory conduct, and Defendants are entitled to summary judgment on Count I.

**C. Count II**

Count II is brought by Plaintiff Knowles against the Township and Defendant Kreseski. (Doc. 20 at 8). Plaintiff claims that Defendants retaliated against him for filing this lawsuit. (Id. ¶44).

The First Amendment's "Petition Clause protects the right of individuals to appeal to courts." *Guanrieri*, 564 U.S. 379, 387 (2011). So the filing of a lawsuit, as a general matter, is constitutionally protected.

But Plaintiff does not identify an adequate basis on which to hold Defendant Kreseski liable. He testified that following the institution of this suit, Kreseski "discontinued … verbal conversation" with him. (Doc. 45-1 at 25). Instead, Kreseski informed him that from then on, he preferred communications through text. (Id.). This plainly does not constitute actionable retaliation—it falls squarely within the category of *de minimis* conduct which would not deter a person of ordinary firmness from exercising his First Amendment rights. So Defendants are entitled to summary judgment on Count II's claim against Defendant Kreseski.

- 16 -

**D. Municipal Liability**

Plaintiffs seek to hold the Township liable based on its alleged "acquiescence" in Defendant Fetch's conduct. (Doc. 49 at 43). But as discussed above, the court concludes that Defendant Fetch did not violate Plaintiffs' constitutional rights. Because Plaintiffs have not established an underlying constitutional violation, there can be no §1983 municipal liability. *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013). Defendants are therefore entitled to summary judgment on Plaintiffs' claims against the Township as well.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted. An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 1, 2024**
19-2115-01

- 17 -